Argued January 11, reversed February 15, 1927.

## STERN MAYER COMPANY *v.* R. L. SABIN.

(253 Pac. 10.)

Assignments for Benefit of Creditors—Charge of 4 Per Cent of Amount Recovered for Creditor, for Realizing $11,291.62 on $23,214.68 Claim, Held Reasonable Compensation for Assignee.

1.  Assignment charges, aggregating 7 per cent of dividends recovered by creditor in administration of debtor's estate, computed by assignee charging certain percentage depending on gross amount realized under assignment, reasonableness of which charge is conceded, and by charging 4 per cent on net receipts of $11,291.62 paid to plaintiff creditor, or $455, being 2 per cent more than was charged members of Merchants' Protective Association which assignee represented, *held* reasonable.

Assignments for Benefit of Creditors—Manner of Estimating Assignment Charges in Administering Debtor's Estate is Immaterial if They are Reasonable.

2.  Manner of estimating assignment charges for administration of debtor's estate, basing them on regular schedule used by protective association represented by assignee, is not material, if charges were fair.

---

Assignments for Benefit of Creditors, 5 **C. J.,** p. 1245, n. 61, p. 1248, n. 94, p. 1252, n. 55, p. 1254, n. 82.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is an action for money had and received by the defendant for the use and benefit of the plaintiff in the sum of $451.65. From a judgment in favor of plaintiff for the amount claimed, defendant appealed.

The complaint is in the usual form. The answer denies the allegations of the complaint, and further avers an accord and satisfaction. At the close of the testimony the defendant moved for a nonsuit and assigns, among other errors claimed, the refusal to grant the nonsuit.

The facts involved in the case are substantially as follows: In September, 1921, R. M. Gray, Inc., an Oregon corporation operating a large clothing store in Portland, Oregon, was in financial difficulties. A conference of the debtor and its local and other creditors, and R. L. Sabin, secretary of the Merchants' Protective Association, was held in the offices of the association. Among the creditors present at this conference was Daniel S. Stern of Chicago, president and treasurer of the Stern Mayer Company, an Illinois corporation, and the largest creditor.

As stated by Mr. Stern, at this conference, "there was some informal discussion as to whether or not an assignment should be made, or might be made, by Mr. Gray to Mr. Sabin, acting for the Merchants' Protective Association." Mr. Stern neither assented to nor dissented from this assignment at that time. Later a general meeting of the creditors was held, and on September 28, 1921, they authorized the voluntary assignment. Accordingly the assignment was made on that date to R. L. Sabin. Stern Mayer Com-

pany thereafter assented to the assignment by filing its claim in the proceedings. The claim filed was for $23,214.68. Under the instrument of assignment, which is termed a common-law assignment, it was provided "that the actual necessary expense incurred in the assignment" should be paid out of the fund.

The Merchants' Protective Association is a corporation voluntarily organized under the laws of Oregon by certain of the merchants of the City of Portland, for the purpose of collecting their debts and protecting their members in their business dealings. The defendant, Sabin, was at the date of the assignment, and for a long time prior thereto, the secretary of the association. The association maintains a large office with suitable appliances and a numerous force of employees, who were under the direction and control of Sabin. The entire expense of this office was paid by the members of the association. In administering the assignment of the estate Sabin used the office, appliances and employees of the association.

Some of the creditors of Gray were members of the association and others, including the plaintiff, were not. The assignment was made to R. L. Sabin, although the business was transacted in the office of the association, and in the same manner as it would have been if the assignment had been made to the association instead of to Sabin, its secretary. Sabin, as secretary, was paid a salary by the association and all of the charges made in the administration of the assignment of the estate were turned over to the Merchants' Protective Association. It also appears that certain members of the association gave their time in managing the association as a board of directors without compensation. Under these circumstances, with the aid of the Merchants' Protective

Association employees and the use of its offices and appliances, Sabin proceeded to and did administer the assignment.

Cash sales of the stock of goods assigned were made to the amount of $5,665.38. By a sale of the stock in bulk, $33,903.32 was realized. After deducting a portion of the expense and disbursements there remained $35,470.08 which, after making a further deduction for the expenses and charges of the administration, amounting to 4 per cent of the net amount charged to nonmembers of the association and 2 per cent to members of the association, the balance was for disposition to the creditors. The Merchants' Protective Association has a regular schedule of charges; a certain percentage on the first $5,000, a lesser percentage on the next $5,000, and still less percentage on the balance of the gross amount realized under the assignment. Then the further deduction of the 4 per cent of the net amount realized by creditors, that is, dividends applicable to them, is made as against nonmembers, and a charge of 2 per cent on the same basis is made against members of the association.

The differentiation between members and nonmembers is because of the upkeep and expenses of the office and office force maintained by the members of the Merchants' Protective Association and general overhead, which office and office force were utilized by Sabin, the assignee in the administration of the estate.

On November 5, 1921, a dividend was distributed and a check of the Merchants' Protective Association in the amount of $8,914.44 was sent to the attorney for Stern Mayer Company upon the claim of that company. This check showed on its face that it was dividend No. 1 of 40 per cent, totaling $9,285.87, less the Merchants' Protective Association charge of

$371.43, the remainder being the amount of the check. The following language also appears on the check—

"No receipt necessary. Acceptance of this check acknowledges payment of the following items:
        "Re R. M. Gray, City, Div. #1—40%
    Stern Mayer Co. .................$9,285.87
    Less M. P. A. charge.............    371.43
                                      _____
                                        8,914.44"

Upon receipt of this check the attorney for plaintiff wrote to Mr. Sabin and returned the check, insisting that the amount of $9,285.87 be sent him without deduction. Objection was made to the charge of $371.43 and a check was requested to be returned without the annotation made thereon or so worded "that it does not constitute a receipt in full."

After considerable correspondence and argument by letter and over the telephone, the attorney wrote Mr. Sabin to return the check as it was originally tendered. Mr. Sabin returned the check, stating it covered 40 per cent dividend of the Stern Mayer Company against R. M. Gray. Upon receipt the check was accepted and cashed by the attorney. Thereafter a further dividend of 9 per cent was paid, amounting to $2,005.75, with the same character of annotations thereon, the deduction being $83.57 for the same kind of a charge. This check was also sent to the attorney by plaintiff and received and cashed without objection.

The trial court, among other things, found as follows:

"That said Sabin charged for the expenses of administering said estate a certain percentage of the gross receipts, the reasonableness of which charge is conceded. In addition thereto he charged each creditor who was not a member of said association four

per cent of the amount due him as a dividend, and charged each creditor who was a member of said association two per cent of the amount due him as a dividend. * *

"Said dividend charge, as set forth, in the second sentence of Finding 8, was made under the rules of said Association and the different rates of such charge to different classes of creditors were made under the same rules, but were not claimed to the plaintiff as expenses of administration or reported as such."

As a conclusion of law the court found in part as follows:

"That the defendant lawfully could charge a reasonable sum for the expenses of administering said estate including a reasonable sum for his own services; but he could not charge any sum to any creditor under the rules of any organization or for the benefit of any organization or person. * *

"That the charge of 4 per cent made against the plaintiff's dividend as a charge under the rules of the Merchants' Protective Association was illegal and without lawful authority. * *

"That particularly defendant could not lawfully charge different classes of creditors different rates for any service or for any purpose."

The court further found, as a conclusion of law, that the receipt and retention of the checks was not an accord and satisfaction and rendered judgment against the defendant.                    REVERSED.

For appellant there was a brief over the name of *Mr. W. G. Keller,* with an oral argument by *Mr. Sidney Teiser.*

For respondent there was a brief over the name of *Mr. C. D. Christensen,* with an oral argument by *Mr. Maurice W. Seitz.*

BEAN, J. — 1. It is conceded by both sides and found by the trial court that the defendant R. L. Sabin as such assignee could charge a reasonable sum for his services and the expenses of administering the estate. Therefore, the question in the case is, Was the charge made to plaintiff in the aggregate reasonable and fair? We do not deem it a matter of consequence as to the form or name given to the charges, nor as to whether Sabin was acting in the matter in his official capacity as secretary of the Merchants' Protective Association. If the office and appliances of the Merchants' Protective Association were used, and the clerks and stenographers of the association rendered the assignee assistance in administering the estate, then the assignee was warranted in paying the association a reasonable compensation therefor. The uncontradicted testimony shows that the charges made by the defendant assignee to the plaintiff were fair and reasonable.

Both the percentage on the gross amount and the percentage on the net amount is an assignment charge, the only difference being a matter of computation, or the manner of arriving at a reasonable compensation for the services performed. The latter percentage on the net amount paid to plaintiff by the assignee is the amount involved in this case. Both of the items referred to aggregate, as computed by the assignee, to about a 7 per cent "on the recoveries."

R. L. Sabin, who has had about thirty-five years' experience in settling such estates, was called as a witness for plaintiff. He testified to the effect, in regard to the estate of Gray, that there were a large number of creditors, liabilities of some seventy or eighty thousand dollars, and a stock of goods badly depleted by sales. It was an embarrassing administra-

tion of that kind. By diligence the officers and
employees of the Merchants' Protective Association
succeeded in getting a highly advantageous sale of
the property, and it paid out to creditors better than
was anticipated at first; that considering the fact that
charges cover the services of the assignee, something
for overhead, of rent, stenographers, postage, office
expense generally, a gross charge of from 6 to 8, or
even 10 per cent, would be reasonable in the matter;
that the charge made was less than that.

2. As stated, this testimony was not disputed.
Plaintiff complains that the charges were made under
the rules of the Merchants' Protective Association
and that it is not bound thereby. If the charges com-
puted by such rules were not proper charges, the
plaintiff would not be bound to allow the same. But
the fact of the manner of estimating the charges and
expenses would not be material, if a correct result was
obtained. That the assignee and the Merchants' Pro-
tective Association had for a number of years per-
formed like services in administering like estates and
had charged for such services according to an adopted
rule, would not tend to show that the compensation
claimed was not reasonable, but is some indication of
the reverse.

The assignee is criticised for the reason that he
charged for services rendered as assignee 4 per cent
on the net amount to creditors who were not members
of the Merchants' Protective Association, and 2 per
cent to members of the association. In effect, the
compensation was estimated as follows: Nonmembers
charged 4 per cent; members charged 2 per cent, plus
dues paid by them, and their support and responsi-
bility for maintenance and operation of the Merchants'

Protective Association, which was estimated equal to 4 per cent.

If there is any error in so arriving at the charges, it is in making the estimate. No inequality in the estimate is shown. It is apparent that merchants and other business men of the City of Portland cannot organize and operate an association like the Merchants' Protective Association without the expenditure of time and money. When a nonresident of the state, who is not a member of the association, receives the benefit of the valuable services and advantages of the association, through the medium of an assignee, it is only fair that such nonmember pay through the same medium a reasonable amount for the services rendered so as to equalize such charges and expenses, at all times, however, keeping the same within a reasonable figure. It is in evidence that such services have often been rendered and the compensation fixed in the manner mentioned for the merchants of San Francisco, California.

The motion of defendant for a nonsuit should have been granted. The judgment of the Circuit Court will be reversed and the cause will be remanded, with directions to grant the nonsuit.

REVERSED AND REMANDED WITH DIRECTIONS.

BURNETT, C. J., and BROWN and BELT, JJ., concur.